UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK LUCE                                                CIVIL ACTION

VERSUS                                                   No. 10-1334

C&E BOAT RENTAL, LLC                                     SECTION I

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment, filed on behalf of defendant, C&E Boat Rental, LLC ("C&E").[1] Plaintiff, Mark Luce ("Luce"), opposes the motion.[2] For the following reasons, the motion is **GRANTED**.[3]

### *BACKGROUND*

Luce alleges that he is a Jones Act seaman who had been hired in mid-2009 as a deckhand by C&E. Luce asserts that on November 20, 2009 he injured his lower back while working for C&E.[4]

Following his alleged accident, Luce sought medical treatment for his back. On December 4, 2009, Luce had an MRI performed on his back.[5] On December 8, 2009, Dr.

---

[1] R. Doc. No. 12.

[2] R. Doc. No. 13.

[3] During an October 27, 2010 telephone conference with the Court, counsel for both parties agreed that any and all exhibits submitted by the parties relative to this motion are authentic. The Court observes that only portions of Luce's deposition transcript were submitted with C&E's summary judgment motion.

[4] R. Doc. No. 12-4, pgs. 16-17.

[5] R. Doc. No. 12-10, pg. 4.

William Alden ("Dr. Alden") reviewed the results of Luce's MRI. In his report, Dr. Alden stated:

> [Luce] presents today with lumbar MRI imaging which I have personally reviewed and discussed with the patient the findings of foraminal stenosis at [the] L5/S1 [region of the spine] compressing the L5 nerve root causing radicular pain. I have also discussed the Medic Type 2 changes and the instability at the L5/S1. I have also told him that the disc herniation on the right at this level is only part of the pathology and addressing this only more likely than not would require stabilization and a second surgery. I have discussed the L5/S1 ALIF [medical procedure] with the patient and its rationale from a decompressive and stability standpoint. I have told the patient that I will give him time to think this over and discuss this with his family and return to discuss surgery.[6]

Dr. Alden stated that his impressions of Luce's condition were "[l]umbar [s]pinal [s]tenois" and "[s]egmental [i]nstability."[7]

Before being hired by C&E in mid-2009, Luce sought treatment for back pain on a number of occasions. During a deposition, Luce stated that he recalled that on August 16, 2003, he was admitted to a hospital after complaining of severe low back pain.[8] Two days later, on August 18, 2003, Luce had a CT scan performed on his lumbar spine, which showed narrowing of the L5-S1 disc space with a vacuum in the disc, although no disc herniations were found at that time.[9] According to Luce, he was told after such CT scan that "there wasn't [sic] no significant problems."[10]

---

[6] R. Doc. No. 12-10, pg. 7.

[7] Id.

[8] R. Doc. No. 12-4, pgs. 34-35.

[9] Id.

[10] Id.

On October 3, 2008, Luce visited Dr. Jay Vega's ("Dr. Vega") medical office. Dr. Vega's medical records from Luce's visit indicate that Luce's chief complaints were "back pain," "sat [sic] nerve pinched," "nerve problems," and "stressed out."[11] Additionally, the medical records contain a medical history questionnaire in which "yes" is checked after the entries for "severe pains in back or neck" and "back injury."[12] Luce admitted that he checked "yes" after "severe pains in back or neck."[13] According to Luce, he "may have" checked "yes" after "back injury," but he did not "know that [he] checked back injury."[14] Dr. Vega "treated [Luce] for depression and sent [Luce] to go get some x-rays."[15]

On December 5, 2008, Luce had an x-ray performed on his back.[16] The radiologist who reviewed Luce's x-ray found that, "[m]ultiple views of the lumbar spine including obliques demonstrate no acute bony fracture, dislocation or bony lesion. Moderate degenerative change is demonstrated at the level L5/S1 where there is narrowing of the intervertebral disc space anterior as well as posterior ostephytes. SI joints are patent."[17]

Luce visited Dr. Vega once more on December 8, 2008. During that visit, Luce's chief complaints were, "[b]ack pain awful, hard to cope," "depression is bad," "hip & legs hurting,"

---

[11] R. Doc. No. 12-7, pg. 9.

[12] Id. at 4.

[13] R. Doc. No. 12-4, pg. 39.

[14] Id.

[15] Id. at 37.

[16] R. Doc. No. 12-7, pg. 11.

[17] Id.

3

"[n]ot sleeping good."[18] Luce acknowledged during a deposition that in December 2008 he told Dr. Vega that his back pain was "awful."[19] Dr. Vega diagnosed Luce with major depression and chronic low back pain.[20] Luce continued to experience back pain after visiting Dr. Vega in December 2008 and was prescribed medication for such pain.[21]

On June 22, 2009, Luce signed a C&E employment application form.[22] Although Luce admitted during a deposition that he signed the form, he denied having filled out the form and asserted that he did not necessarily read the form.[23] Luce stated that a C&E employee filled out the form for him and that the C&E employee did not ask him any questions while she was doing so.[24] The employment application contained the following question: "Have you ever had problems with you [sic] back and/or a back injury?"[25] Such question was answered "no" on the employment application.[26]

---

[18] R. Doc. No. 12-7, pg. 9. During a deposition, Luce agreed that he visited Dr. Vega for low back pain in October 2008 and December 2008. R. Doc. No. 12-4, pg. 49. Luce also agreed that when he visited Dr. Vega for low back pain in late 2008, he was experiencing pain that extended from his back to his hips and legs. R. Doc. No. 12-4, pg. 43.

[19] R. Doc. No. 12-4, pg. 42.

[20] Id.

[21] R. Doc. No. 12-4, pg. 70; R. Doc. No. 12-7 pg. 3.

[22] R. Doc. No. 12-5.

[23] R. Doc. No. 12-4, pgs. 164-68.

[24] R. Doc. No. 12-4, pg. 52.

[25] R. Doc. No. 12-5, pg. 2.

[26] Id. During a deposition, Luce admitted that "[i]t was documented" that he had back pain before the time his C&E application was completed and signed. R. Doc. No. 12-4, pg. 54.

C&E requires its applicants to undergo a pre-employment examination with a doctor "in which the applicant fills out a questionnaire asking if the [applicant] has ever had any prior back disease or injury or back trouble."[27] On June 22, 2009, Luce visited Dr. Walter Daniels ("Dr. Daniels") and completed such questionnaire.[28] The questionnaire contained the following questions: "Have you ever had disease or injury to . . . back, head, bones, joints, or eyes?" and "Have you ever . . . had back trouble?"[29] Both questions were answered "no."[30] During a deposition Luce stated that he answered the questionnaire truthfully.[31] According to Luce, he "define[d] back injury as back surgery."[32] Nevertheless, Luce indicated that his answer with respect to "back trouble" was not accurate.[33]

According to C&E's general manager, David McRae ("McRae"), C&E relied on the answers contained in the pre-employment application and medical questionnaire when it decided to hire Luce.[34] In a sworn statement, McRae stated that C&E would not have hired Luce if it had known of the back problems he had before applying for work with C&E.[35]

---

[27] R. Doc. No. 12-11, pg. 1.

[28] Id.

[29] R. Doc. No. 12-6 (some capitalization omitted).

[30] Id.

[31] R. Doc. No. 12-4, pg. 59.

[32] Id. at 60.

[33] R. Doc. No. 12-4, pg. 66.

[34] R. Doc. No. 12-11.

[35] Id.

In May 2010, Luce filed a lawsuit against C&E seeking, among other forms of relief, maintenance and cure. Asserting a McCorpen defense, C&E has filed a motion for partial summary judgment with respect to its obligation to provide Luce with maintenance and cure.

*LAW AND ANALYSIS*

**I.      Summary Judgment**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

## II. Discussion

### A. *McCorpen* Defense to Maintenance and Cure

A shipowner has an obligation to pay both maintenance and cure to any seaman injured while in service to the ship. Boudreaux v. United States, 280 F.3d 461, 468 (5th Cir. 2002). Pursuant to this obligation, the shipowner must pay an allowance for subsistence, reimburse the seaman for medical expenses, and take "all reasonable steps to ensure that the seaman receives proper care and treatment." Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir. 1987). The maintenance and cure obligation exists regardless of an employer's fault or a vessel's unseaworthiness. Id. Nor is the obligation diminished by a seaman's own negligence. Boudreaux, 280 F.3d at 468.

An employer is entitled to investigate a seaman's claim for maintenance and cure benefits and may rely on certain defenses to deny claims for benefits. Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005). One such defense, known as the McCorpen defense, is that the injured seaman willfully concealed from his employer a preexisting medical condition. Id. (citing McCorpen v. Cent. Gulf Steamship Corp., 396 F.2d 547, 549 (5th Cir. 1968)). To prevail on a McCorpen defense, the employer must show that:

> (1) the claimant intentionally misrepresented or concealed medical facts;

>  (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and
>  (3) a connection exists between the withheld information and the injury complained of in the lawsuit.

Id.

> B. *Did Luce intentionally misrepresent or conceal medical facts?*

The first prong of the McCorpen defense requires the employer to prove by a preponderance of the evidence that the injured worker intentionally misrepresented or concealed medical facts. See Brown, 410 F.3d at 171. As the Fifth Circuit has determined, "[t]he language of McCorpen lends itself to [an] objective interpretation of intentional concealment." Id. at 174 (citing McCorpen, 396 F.2d at 549). "Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the 'intentional concealment' requirement." Brown, 410 F.3d at 174 (citing Vitcovich v. Ocean Rover O.N., No. 94-35047, 106 F.3d 411, 1997 WL 21205, *3 (9th Cir. Jan. 14, 1997) (unpublished)) (internal quotation marks omitted). "McCorpen's intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination." Id. at 175; see also Savarese v. Pearl River Navigation, LLC, Civil Action No. 09-129, 2010 WL 3720907, *7 (E.D. La. Sept. 14, 2010) (Vance, J.) (citing Brown, 410 F.3d at 174) ("The intentional concealment prong of the McCorpen test does not require a finding of subjective intent."). C&E argues that Luce intentionally misrepresented or concealed medical facts in the pre-employment and medical history forms required by C&E that were completed on June 22, 2009.

First, Luce was questioned during a deposition with respect to his C&E employment application. During such deposition, Luce admitted that he signed the application, but denied having personally answered "no" to the following question: "Have you ever had problems with

. . . you [sic] back and/or a back injury[?]"[36]  Luce asserted that a C&E employee filled out the application and then Luce signed it.  Luce did state during the deposition that if he had personally filled out the application, he would have indicated that he "had problems with his back."[37]  Nevertheless, since there is a lack of evidence that Luce provided the answers to the application, such document cannot serve as the basis for a granting of summary judgment in connection with the maintenance and cure issue.[38]  The lack of evidence with respect to the employment application is not in conflict with the pre-employment medical questionnaire discussed below and, therefore, it does not preclude the granting of a partial summary judgment.

Second, as stated, C&E requires its applicants to undergo a pre-employment examination with a doctor "in which the applicant fills out a questionnaire asking if the [applicant] has ever had any prior back disease or injury or back trouble."[39]  On June 22, 2009, Luce visited Dr. Daniels and completed such questionnaire.[40]  The questionnaire contained the following questions: "Have you ever had disease or injury to . . . back, head, bones, joints, or eyes?" and

---

[36] R. Doc. No. 12-4, pg. 53 (internal quotation marks omitted).

[37] R. Doc. No. 12-4, pg. 58.

[38] During an October 27, 2010 telephone conference with the Court, counsel for C&E conceded that because Luce denied having personally completed or read the employment application, a genuine issue of material fact exists with respect to whether Luce intentionally misrepresented medical facts in his employment application.  Nevertheless, because the Court finds that Luce intentionally misrepresented medical facts on the form he filled out during his pre-employment medical examination with Dr. Daniels, C&E has fulfilled McCorpen's first prong.

[39] R. Doc. No. 12-11, pg. 1.

[40] Id.

"Have you ever . . . had back trouble?"[41]  Both questions were answered "no."[42]

Luce was questioned during a deposition with respect to his answers to the June 22, 2009 medical history questionnaire.  C&E argues that the following exchange between defense counsel and Luce demonstrates that Luce misrepresented or concealed medical facts:

| | |
|---|---|
| Defense counsel: | In response to the question, had you ever had back trouble, a response of no is not accurate.  You agree with that? |
| Luce: | I agree with that. |
| Defense counsel: | When you filled this form out for [your physician], you were not truthful in answering the question whether you had ever had any back trouble.  Do you agree? |
| Luce: | I agree that I might have misrepresented myself as far as injury and all of that. |
| Defense counsel: | With respect to back trouble and with respect to back injury, you misrepresented yourself on this form; is that correct? |
| Luce: | If that's what you are saying I did, I did check those off. |
| Defense counsel: | That's not an accurate representation of what has been your history with your back, correct? |
| Luce: | Like I said, I've had back problems.[43] |

Because "McCorpen's intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination," Luce's testimony with respect to the pre-employment medical history questionnaire and his answers to the questionnaire demonstrate that he "[f]ailed to disclose medical information in [interviews or questionnaires] that [were] obviously designed to elicit such information . . . ."  Brown, 410 F.3d at 173-75.  Such failure is

---

[41] R. Doc. No. 12-6 (some capitalization omitted).

[42] Id.

[43] R. Doc. No. 12-4, pg. 66.

sufficient to satisfy McCorpen's intentional concealment prong. Id.

Luce's argument that he understood the term "back injury" on the medical history questionnaire only to mean "back surgery" is unavailing.[44] As previously noted, Luce also indicated on such questionnaire that he had never had back trouble.[45] Luce admitted that this was an incorrect response. Accordingly, the Court concludes that no material issue of fact exists with respect to whether C&E has fulfilled McCorpen's first prong.

  *C.*   *Were the non-disclosed facts material to C&E's decision to hire Luce?*

As the Fifth Circuit has determined, "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of [the McCorpen] analysis." Brown, 410 F.3d at 175.

In a sworn statement, C&E's general manager, David McRae ("McRae"), stated that, "C&E asks each applicant in its employment application form whether the applicant has ever had any back problems or a back injury and, additionally, has a doctor perform a pre-employment examination in which the applicant fills out a questionnaire asking if the person has ever had any prior back disease or injury or back trouble."[46] McRae further asserted that Raynes "stated on a pre-employment medical examination form, which he filled out for Dr. Daniels on June 22, 2009, that he had never had any back trouble and that he had never had any disease or injury to

---

[44] Id. at 60.

[45] R. Doc. No. 12-6.

[46] R. Doc. No. 12-11, pg. 2.

his back."[47] Additionally, McRae stated that, "[b]ased on [such] representation[] and other information Luce provided in the pre-employment examination, as well as [a physician's] statement that [the physician] found no medical condition preventing Luce from performing the job of a deckhand, C&E hired Luce to work as a deckhand aboard the M/V BETH E CHERAMIE."[48]

These statements establish that C&E asked Luce specific medical questions before hiring him and such "inquiry [was] rationally related to [Luce's] physical ability to perform his job duties." Brown, 410 F.3d at 175. Indeed, McRae stated that C&E relied, at least in part, on Luce's assertion in his pre-employment medical history questionnaire that Luce had never had back trouble.[49]

Luce provides no compelling evidence or argument suggesting that C&E has not fulfilled McCorpen's second prong. First, Luce argues that because he "performed [his] job [with C&E] for several months prior to his accident,"[50] any preexisting problems with his back could not have been material to C&E's decision to hire him. As the Fifth Circuit has determined, when an employer "[b]ases its hiring decision (at least, in part) upon whether applicants had 'Past or Present Back and Neck Trouble,' not whether [the applicant] could, on the date of [his] application, complete manual labor tasks," the applicant's failure to disclose such information is "material to [the employer's] hiring decision." Brown, 410 F.3d at 175.

---

[47] Id. at 1.

[48] Id. at 1-2.

[49] Id.

[50] R. Doc. No. 13, pg. 9.

Second, Luce argues that because C&E has a policy of continuing to employ its workers after they are injured while working for C&E, Luce's back problems could not have been material to C&E's decision to hire him. Luce fails to direct the Court to any authority suggesting that the Court may compare a company's post-employment policies with a company's pre-employment policies when determining whether an applicant's pre-employment misrepresentations relative to an injury were material to the company's decision to hire such applicant. Accordingly, C&E has fulfilled McCorpen's second prong.

    D.    *Is there a causal connection between the withheld information and the injury complained of in the lawsuit?*

The third element of the McCorpen defense asks whether there is a causal connection between the prior medical history and the present injury. A seaman who intentionally misrepresents medical facts which would have been material to an employer's hiring decision may still be entitled to maintenance and cure benefits, "barring a connection between the withheld information and the injury which is eventually sustained." Brown, 410 F.3d at 175 (quoting Howard v. A.S.W. Well Serv. Inc., No. 89-2455-L, 1991 WL 365060, *2 (W.D. La. Dec. 5, 1991)).

In determining whether there is a causal connection between the prior medical history and the present injury, "[t]he inquiry is simply whether the new injury is related to the old injury, irrespective of their root causes." Johnson v. Cenac Towing, Inc., 599 F. Supp. 2d 721, 728-29 (E.D. La. 2009) (Vance, J.). "[T]o establish a 'causal link,' it [is] enough for the defendant to show that the old and the new injuries 'were to the same location of the plaintiff's lumbar spine.'" Id. at 728 (quoting Brown, 396 F.2d at 176) (alteration omitted).

As previously noted, Luce stated during a deposition that he recalled that on August 16, 2003, he was admitted to a hospital after complaining of severe low back pain.[51] Two days later, on August 18, 2003, Luce had a CT scan performed on his lumbar spine, which showed narrowing of the L5-S1 disc space with a vacuum in the disc, although no disc herniations were found at that time.[52] On October 3, 2008, Luce visited Dr. Vega's medical office. Dr. Vega's medical records from Luce's visit indicate that Luce's chief complaints were "back pain," "sat [sic] nerve pinched," "nerve problems," and "stressed out."[53] Additionally, the medical records contain a medical history questionnaire in which "yes" is checked after the entries for "severe pains in back or neck" and "back injury."[54] Luce admitted that he checked "yes" after "severe pains in back or neck." Luce visited Dr. Vega once more on December 8, 2008. During that visit, Luce's chief complaints were, "[b]ack pain awful, hard to cope," "depression is bad," "hip & legs hurting," "[n]ot sleeping good."[55] Luce acknowledged during a deposition that in December 2008 he told Dr. Vega that his back pain was "awful."[56] Dr. Vega diagnosed Luce with major depression and chronic low back pain.[57] Luce continued to experience back pain

---

[51] R. Doc. No. 12-4, pgs. 34-35.

[52] Id.

[53] R. Doc. No. 12-7, pg. 9.

[54] Id. at 4.

[55] R. Doc. No. 12-7, pg. 9. During a deposition, Luce agreed that he visited Dr. Vega for low back pain in October 2008 and December 2008. R. Doc. No. 12-4, pg. 49. Luce also agreed that when he visited Dr. Vega for low back pain in late 2008, he was experiencing pain that extended from his back to his hips and legs. R. Doc. No. 12-4, pg. 43.

[56] R. Doc. No. 12-4, pg. 42.

[57] Id.

after visiting Dr. Vega in December 2008 and was prescribed medication for such pain.[58] Luce's December 2008 MRI revealed "moderate degenerative changes of the lumbar spine" that was "demonstrated at the level L5/S1 [region of his spine] where there is narrowing of the intervertebral disc space anterior as well as posterior osteophytes."[59]

Luce alleges that his injury occurred in November 2009. In December 2009, Luce was examined by a physician who diagnosed Luce with "foraminal stenosis at L5/S1 compressing the L5 nerve root causing radicular pain."[60]

As stated, in order to establish the "causal link" necessary to fulfill McCorpen's third prong, "it [is] enough to show that the old and the new injuries were to the same location of the plaintiff's lumbar spine." Id. (internal quotation marks, citation, and alteration omitted). By establishing that Luce's old and new injuries both occurred at the L5/S1 region of Luce's spine, C&E has made such a showing. Accordingly, no material issue of fact exists with respect to whether C&E has fulfilled McCorpen's third prong and **IT IS ORDERED** that C&E's motion for partial summary judgment with respect to maintenance and cure is **GRANTED**.

New Orleans, Louisiana, November ___1st___, 2010.

                                        **LANCE M. AFRICK**
                                        **UNITED STATES DISTRICT JUDGE**

---

[58] R. Doc. No. 12-4, pg. 70; R. Doc. No. 12-7 pg. 3.

[59] R. Doc. No. 12-7, pg. 11.

[60] R. Doc. No. 12-10, pg. 7.